[Crim. No. 2376.   Third Dist.   Feb. 9, 1953.]

THE PEOPLE, Respondent, v. CLYDE J. CRAWFORD et al., Appellants.

Louis A. Boli for Appellants.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—Clyde J. Crawford and Wilbur Dell Crawford each appeals from the judgment of conviction of grand theft and from the order denying motion for new trial. The evidence stated in the light favorable to the prosecution may be summarized as follows: On January 23, 1952 certain automobile dealers in Modesto had on their lot a new Oldsmobile coupé. It disappeared from the lot some time between 6:30 and 8 o'clock p.m., at which time the Modesto Police Department was notified that the car was missing. About one hour later two patrol officers who were cruising in the city observed an Oldsmobile answering the description of the missing car. Two men were in it. The officers followed the car some distance to a point where it stopped at a traffic-lighted intersection. The intersection light was red. The officers stopped behind the Oldsmobile, turned on their own colored lights and one of them approached the driver's side of the Oldsmobile, whereupon that car started quickly and went through the intersection at high speed and against the red light. The officer called for it to stop and when it did not he fired three shots at it as it sped away. The officers then pursued the fleeing vehicle at speeds up to 90 miles an hour until, in attempting to make a turn, the car ran into a ditch, hit a tree and stopped. Thereupon the two occupants jumped out and ran and only stopped when the officers, with their guns out, commanded them to come back. These two

men were the appellants herein. It was shown that no permission had been given them or anyone to take the automobile and that between 8:30 and 9 o'clock that same day the appellants had driven the car into a service station in Delhi where they purchased 16 gallons of gas for which appellant Clyde Crawford, giving his name as Jimmie Walker, left a wrist watch. At the trial Clyde Crawford did not take the stand, but his brother Wilbur did. Wilbur testified that while hitchhiking from San Francisco to Fresno he had found the automobile unattended, and with the motor running, on the highway about 6 miles north of Modesto; that he had driven the car down to Keyes where he met his brother Clyde whom he told that a friend had let him have the car in order that he might break it in. He said he had no intent to steal the car.

Appellants first urge that the evidence was insufficient to support verdicts of guilty of grand theft. They argue that mere possesson of stolen property is not sufficient to show the necessary criminal intent for a conviction of theft and that the evidence of the People, taken at full value, only shows the car was missing from the owner's place of business, that it was not taken with the owner's consent, and that appellants were observed in possession of it. It is apparent that the foregoing is far from a complete statement of the evidence and the permissible inferences to be drawn therefrom. The jury did not have to believe Wilbur Crawford's story, but could have inferred that the car was taken from the owner's lot by the appellants, that the quantity of gasoline purchased indicated an intent not to return the car to its owner but to use it for a considerable time and perhaps to drive a great distance. The jury did not need to adopt the suggested explanation of the appellants' reluctance to be arrested as having been generated by their fear of being fired on and on the contrary could have well concluded that their acts in fleeing across the intersection against the red light when they were commanded by the officers to stop and their behavior thereafter were solely referable to guilt. There was evidence that both were acting in concert in that the driver of the car sped it away when he heard the command of the officers to stop; that before that the one not driving had been watching the officers' car as it followed them; and that he joined the driver in flight when the car was disabled. From all the foregoing the jury permissibly inferred felonious taking with intent to steal. (*People* v. *Wissenfeld,* 36 Cal.2d 758-763 [227 P.2d 833].)

Appellants claim the trial court committed error and invaded the province of the jury to the extent of a denial of a fair trial by virtue of certain incidents that occurred after the cause had been submitted to the jury. A considerable number of verdict forms had been given to the jury. ■ The charge, being grand theft committed in the stealing of an automobile, included the offense of violation of section 503 of the Vehicle Code. Recognizing that the conviction of one offense would amount to an acquittal of the other (*People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321]), guilty and nonguilty verdicts as to each were included in the forms. ■ The jury returned after announcing that it had completed its work and a number of verdicts were handed to the court as having been used in arriving at the jury's verdict as to each defendant. After examining the verdicts the court announced that there were two verdicts in conflict and two other necessary verdicts were lacking. The record does not show what the actual facts were to which the court was referring, that is, which verdicts were conflicting and which were lacking. The court explained to the jury, however, that conviction of grand theft would be acquittal of violation of section 503, and vice versa, and that the verdicts should conform to that rule of law. The jury were told to go back and consider their verdicts again. They came in a second time and the court again informed them that there were two conflicts in the verdicts and directed them to again return to the jury room and agree upon the verdicts they were to return. Again the court did not particularize. Appellants indulge in a good deal of speculation concerning what the actual situation was each time the court sent the jury back to the jury room. They refer to section 1161 of the Penal Code wherein the court is authorized, if there be a verdict of conviction and it appear that the jury have mistaken the law, to explain the mistake and direct a reconsideration. They point further to the provisions that if after reconsideration the jury returned the same verdict it must be entered and that in any event if there is a verdict of acquittal the court cannot require its reconsideration. Appellants attempt to analyze the many possible situations that might have existed, in some of which it would have been error for the court to have directed reconsideration; thus they say that if at either time the jury had included any verdict of not guilty in those returned to the court reconsideration could not have been ordered if other verdicts were faulty ■ We think it useless to follow appellants through their highly-

ingenious analysis, for error must be affirmatively shown by the record and cannot rest upon speculation. (8 Cal.Jur. § 568.) ▮▮▮ We cannot say there were any not guilty verdicts returned to the jury nor any guilty verdicts as to which reconsideration was required a second time. ▮▮ Generally speaking, it is the duty of the court to see that verdicts are returned in proper form, and so far as form be concerned to aid the jury in returning correct verdicts. (*People* v. *Ah Gow,* 53 Cal. 627; 8 Cal.Jur. 411-412.) ▮▮ Of course if what the court did amounted in fact to telling the jury to reconsider a not guilty verdict it had returned, such direction would be improper, but even if such were the case it would have to appear further before prejudice could be claimed that on reconsideration a different verdict was returned. Nothing of the sort is shown by, or can be gleaned from, the record here and on the record as presented we must hold that error has not been shown.

▮▮ Appellant Clyde Crawford had been charged with two prior convictions, one, robbery, and the other grand theft in the stealing of an automobile. When asked to plead to these priors he refused to do so and the court thereupon entered denials for him. In proof of the priors the People offered properly authenticated copies of the records of state prisons pursuant to section 969b of the Penal Code. Clyde Crawford objected generally and though he appears from the record to have been directing his objections to the offered proof solely upon the ground that the proof was inadmissible because he had not taken the stand, we think, in view of the fact that he was defending without the aid of counsel, which aid he had refused, that his objection should be treated as sufficient. These records had been obtained by the district attorney and must have been in his possession for some time and must have been examined by him before they were offered. At least if they were not so examined they should have been. They were competent to prove the charged prior of robbery. Not only were they incompetent to prove the charged prior of grand theft in the stealing of an automobile, but, much worse, the second felony referred to therein was that of violation of section 503 of the Vehicle Code and in addition thereto the documents told the jury that the defendant had also been a parole violator. It appears that the introduction of this proof over Clyde Crawford's objection was due to inadvertence of the trial court which failed, upon looking at the offered proof, to detect the inadmissibility of all thereof save

that portion which proved the charged prior of robbery; it appears further, giving him the benefit of any doubt, that the district attorney had likewise failed to note the defects in the offered proof. And it is clear that Clyde Crawford did not detect the same. Nevertheless, the proof was admitted over his objection. It appears further that the district attorney in his opening statement said he would prove that Clyde Crawford had suffered two prior convictions, one of robbery and the other of grand theft in the stealing of an automobile; and that in his argument the district attorney made considerable point of the same matter as having been proved. It is to be noted further that this was a prosecution for grand theft in the stealing of an automobile and the jury were told that the People had proved that Clyde Crawford had been convicted of a similar crime before and had been imprisoned therefor, which was untrue. The seriousness and the prejudicial character of the error of the People in placing this inadmissible matter in the record is apparent. It was not, as urged by the People on appeal, a mere matter of failing to prove the prior charge. The vice lies in the proving of a different crime under the pretense of proving the charged prior and in arguing to the jury that the charged prior had been proven. It is rather well known that habitual criminal offenders tend to specialize upon a certain type of crime in the commission of which they become adept. And here was the district attorney representing to the jury that Clyde Crawford had been convicted of the same type of crime with which he there stood charged, when such was not the truth. The seriousness of the error complained of is such that if the proof of the crime charged here, that is, grand theft in the stealing of an automobile, was not extremely strong we would have no hesitancy in reversing the conviction of Clyde Crawford. But when the facts are considered we think the guilt of these two men was so clearly shown that it cannot be said a miscarriage of justice occurred. For that reason, and for that reason alone, we think the conviction of Clyde Crawford cannot be reversed upon the ground now being discussed. (Art. VI, § 4½.)

█ Finally, complaint is made by Clyde Crawford that he was deprived of his right to subpoena witnesses on his behalf. We have carefully searched the record upon the matter and we think the charge cannot be sustained. It appears that a list of persons for whom subpoenas were desired was given by appellant and that they were either served with subpoenas or the subpoenas issued for them were returned be-

cause service could not be made for one reason or another. The appellant at the trial requested that one witness in particular who had not been served be then subpoenaed. It does not appear that this witness, or any other witness, failure to subpoena whom was complained of, was a witness who would have given evidence that would have been material to appellant's cause. Under such circumstances error is not shown.

The judgments and the orders are affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied February 20, 1953, and appellants' petition for a hearing by the Supreme Court was denied March 9, 1953.