[No. F005651. Fifth Dist. May 1, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN R. BLAIR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

833

COUNSEL

Ilene L. Gusfield, under appointment by the Court of Appeal, and Linda Scaparotti for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BEST, Acting P. J.—Defendant was charged by information with five counts of burglary (Pen. Code,[1] § 459; counts I, III, V, VII, IX) and five corresponding alternative counts of receiving stolen property (§ 496; counts II, IV, VI, VIII, X). Shortly before 5 p.m. on the third day of trial, the jury was returned to the courtroom from its deliberations, and the jury foreman advised the court that the jury had arrived at verdicts as to seven of the counts but was unable to agree as to the other three counts.

Upon examining the verdicts, the trial court noted guilty verdicts on counts II and VI (receiving stolen property) and not guilty verdicts on the corresponding alternative burglary counts (counts I and V). These verdicts were received and recorded. The trial court further noted, but not on the record, that the foreman had signed guilty verdicts for each of the remaining receiving-stolen-property counts (IV, VIII, X), but that the not guilty verdict forms for the corresponding burglary counts (III, VII, IX) were unsigned. The trial court ordered the jurors to return the following morning to reconsider their verdicts on counts III, IV, VII, VIII, IX, X. Following additional deliberations the next day, the jury returned verdicts of guilty on counts IV and X (the same as before) and not guilty verdicts on counts III and IX, the corresponding alternative burglary counts. The verdict on count VIII, however, was now not guilty, and the verdict on the corresponding alternative burglary count (VII) was guilty.

Defendant was sentenced to the aggravated term of six years on count VII (burglary) and to a consecutive eight-month term on count II. Concurrent two-year terms were imposed on counts IV, VI and X.

We will reverse defendant's conviction on count VII, affirm his conviction on counts II, IV, VI and X, and remand for resentencing.

### STATEMENT OF FACTS

Kimbere Edling left her home in Oakdale on November 10, 1984. When she returned, she discovered that her home had been broken into and her jewelry boxes and jewelry were missing. That same day, the home of Gail

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Jackson was burglarized. Among the missing items were jewelry boxes, jewelry, cameras and tools.

On November 11, 1984, James Ryan's automobile was burglarized, and a stereo, speakers and a tote bag were taken.

On November 13, 1984, the Oakdale home of Woodrow Stillman was burglarized. A stereo system and a statue were taken.

On November 14, 1984, two bicycles were stolen from the Oakdale garage of John Lewis.

Most of the property described above was found at defendant's residence on November 14, 1984. Detective Glen Gulley of the Oakdale Police Department had received an anonymous call which led him to Phillip Howard who admitted committing the burglaries and claimed that he was assisted by defendant. Howard took Detective Gulley to defendant's residence where the officer spoke with defendant and discovered the stolen property. The stereo system taken from the Stillman residence was set up in defendant's living room. Most of the other property was in a bedroom at the residence. Defendant told the officer that he had purchased the stereo from a man in Nevada, but he did not know his name or where he lived.

A ring taken from Ms. Jackson's residence and the two Lewis bicycles were recovered from the home of the mother of defendant's girlfriend.

Howard was granted immunity and testified that he and defendant committed each of the burglaries just discussed.

### DEFENSE

Defendant denied committing any burglaries but admitted that he permitted Howard to store stolen property at his residence.

### DISCUSSION

### I

*Did the trial court err in requiring the jury to reconsider their initial verdicts?*

Defendant contends that the trial court committed reversible error by requiring the jury to reconsider its initial verdicts.

Defendant had been charged with five counts of burglary and, in the alternative, with five counts of receiving stolen property. The jury was instructed that the burglary and receiving-stolen-property counts were alleged in the alternative and that "If you find the defendant guilty of one of such offenses, you must find him not guilty of the other." During deliberations, the jury asked the following question: " 'If we find him guilty of any kind of burglary, does this mean that we have no ruling with regard to the corresponding count of receiving stolen property?' " The court answered this question as follows: "If you make a finding of guilty, and your question specifically was burglary, and I'll address myself to that, suppose that you find him guilty of burglary in Count I. In Count II, your finding must be not guilty. Because they are in the alternative. He cannot be guilty of both. You must return a not guilty verdict of receiving. [¶] Conversely, if another count you find him guilty of receiving, then he must be found not guilty of the burglary."

Later during the deliberations, the jury asked, " 'If we are deadlocked with regard to any of the burglary counts, are we allowed to reach a guilty verdict on the corresponding receiving stolen property count?' " The court answered this question as follows: "Yes. If you are not satisfied that the Defendant is guilty of either of the counts beyond a reasonable doubt, you have a unanimous decision and you are dead-locked on that particular count, then if you all agree beyond a reasonable doubt that he is guilty of the other count, you may, yes, render a verdict in respect to that particular count. And you may also—I'll make one further statement, you can render, if you have reached verdicts, you can render verdicts on any or all of the counts. If you can't reach a verdict on one count, or one of two counts, you can go on to the rest of them and render all the verdicts that you can reach. You can do that, also."

At 10 minutes before 5 o'clock, the court summoned the jurors to inform them that there would be no transportation to the parking lots after 5 o'clock and to determine whether the jurors wanted to continue to deliberate or preferred to come back the next day. The jurors informed the court that they had completed their deliberations. The following colloquy ensued:

"FOREMAN LYLE: We reached a verdict on seven of the counts, and we seem to be hopelessly hung on three others, or were unable to reach a verdict on three others.

"THE COURT: All right, let me have the counts that you've reached the verdicts on.

"You've got some verdict forms here but they are not all the verdict forms. That they're—

"FOREMAN LYLE: I don't understand.

"THE COURT: If a—if you found him guilty of one count, he must be found not guilty of the other in the alternative count. If you found—if you found him, say, like guilty of Count I, he should be not guilty of Count II. If you found him guilty of Count III, or vice versa. So I should have the corresponding counts on ones that you arrived at.

"FOREMAN LYLE: May I make a comment, Your Honor? Either—we may have misunderstood your, your instructions the last time we came out, but we had the impression that if we were unable to come to a conclusion with regard to a burglary we could just set that aside and say we can't make a decision on that, and we could render a guilty verdict on the—with regard to the receiving stolen property. And that's what we did do.

"THE COURT: All right. If you, if you are hung and you cannot reach a verdict on a particular count, but you have reached a unanimous decision on the other count, that's what you're saying?

"A. JUROR: Uh-huh.

"THE COURT: Okay.

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"THE COURT: Ladies and gentlemen, I have these verdicts one, two, three, four, five, six, seven verdicts, and there is a serious question in the Court's mind in respect to these verdicts and the manner which they were arrived at. Namely, the—from what the foreman just said about some of the jurors being—not being able to reach a verdict on particular counts, and Counsel, may I have a stipulation at this time that we not read these verdicts, but return—have the jury come back tomorrow for further deliberations in this case?

"MR. McGILLIVARY [defense counsel]: Well—

"MR. EBERLEY [deputy district attorney]: So stipulated.

"MR. McGILLIVARY: Well, I—I think—Your Honor, can we approach the bench again? On some—I won't stipulate to that, I guess is all I can say.

"THE COURT: I'm going to find that verdicts have been a—appropriate verdicts have been found by the jury in respect to Counts I and II, because

they are in the alternative, and they are correctly made and will be received at this time.

"And Counts V and VII [*sic*], also, counts in the alternative, and they will be filed and read at this time.

"The other counts are not proper verdicts, the Court so finds, and I'm going to return the jury back to court tomorrow to commence their deliberations and to complete their verdicts in respect to those other counts."

The court then announced and received the verdicts as to counts I, II, V and VI. Defendant was found guilty as to each receiving count (II and VI) and not guilty as to each burglary count (I and V).

The jury returned to court the following day with verdicts on the remaining counts. Verdicts of not guilty were returned as to the burglaries charged in counts III and IX and as to the receiving stolen property charged in count VIII. Guilty verdicts were returned as to the receiving stolen property charged in counts IV and X and as to the burglary in count VII.

Although the trial court did not read all of the *original* verdicts into the record, an agreed statement establishes that the jury had originally returned five guilty verdicts on the five receiving-stolen-property counts (II, IV, VI, VIII, X), two not guilty verdicts on two of the burglary counts (I, V), and was deadlocked on three of the burglary counts (III, VII, IX).

Section 1161 provides in pertinent part: "When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the Court cannot require the jury to reconsider it."

Plaintiff contends that the procedure utilized by the trial court to correct the jurors' "misunderstanding" of their duties was proper. The first question, however, is whether the jurors had any misunderstanding at all. The jurors were obviously given some inconsistent instructions. They were originally told that if they found guilty on one count, they would have to find not guilty in the corresponding alternative count. The last instruction they received, however, was that if they could not reach an agreement with regard to a burglary count, they could consider the corresponding alternative receiving-stolen-property count and properly bring back a guilty verdict on that count. Whether this last instruction was correct is unimportant to our determination here. What is important is that the jury followed this instruction

and cannot really be deemed to have "mistaken the law." Thus, the court's direction that the jurors reconsider their verdicts could not be premised on the "mistaken the law" language of section 1161.

Assuming, arguendo, that the jurors did misunderstand their duties in regard to alternative counts, section 1161 would still appear to be inapplicable. While the jurors may have "mistakenly" failed to bring in not guilty verdicts on the alternative burglary counts, there is nothing in the record to suggest they made a mistake in reaching their unanimous verdicts on the receiving counts. The jurors are not required to consider alternative counts in a particular order, i.e., one before the other. Thus, the jurors were not required to unanimously find the defendant not guilty of burglary before they could consider whether he was guilty of receiving. Therefore, once the jury did come back with guilty verdicts, the judge could direct reconsideration only if those verdicts were reached due to a mistake in the law. There was no mistake here. The inability of the jury to agree that defendant was not guilty of the alternative burglary counts was merely inconsistent with their guilty verdicts. This inconsistency could have been cured by the trial court without requiring the jurors to reconsider their unanimous verdicts. The court, after accepting the unanimous verdicts, could have directed the jury to enter not guilty verdicts on the unresolved burglary counts, or it could have dismissed the jury and then entered judgments of acquittal on those counts on its own motion. (See § 1162.)

█ Finally, there is a third reason we should conclude the trial court committed error in requiring the jurors to reconsider their verdicts. "[T]he power to reconsider a verdict is subject to the limitation that a defective verdict of acquittal cannot be reconsidered." (*People* v. *Romero* (1982) 31 Cal.3d 685, 693 [183 Cal.Rptr. 663, 646 P.2d 824]; Witkin, Cal. Criminal Procedure (1963) § 532, p. 545.) Technically, while there was no verdict of acquittal with regard to the counts in issue, in substance and effect, the jury returned defective verdicts of acquittal with regard to the three unresolved burglary counts. Since the burglary and receiving-stolen-property counts were alleged alternatively and were based on the same operative facts, a guilty verdict on one count required a not guilty verdict on the corresponding count. (*People* v. *Jaramillo* (1976) 16 Cal.3d 752, 758-759 [129 Cal.Rptr. 306, 548 P.2d 706].)

In *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 511, footnote 5 [183 Cal.Rptr. 647, 646 P.2d 809], the court discussed the concept of "implied acquittal" as follows: "This court recognized the notion of implied acquittal as early as 1854: 'A conviction for manslaughter is an acquittal of the charge of murder, and the verdict, though general in its terms, must, by legal operation, amount to an acquittal of every higher offense charged in the indictment than the particular one of which the prisoner is found guilty.' [Citations.]"

Although *Stone* refers to cases involving lesser included offenses, an analogous situation exists in the present case. As just discussed, by unanimously finding defendant guilty of receiving stolen property, the jury could not properly have convicted defendant of burglary as well.

In *People* v. *Crawford* (1953) 115 Cal.App.2d 838 [252 P.2d 963], the jurors were sent back twice by the trial court to reconsider their verdicts because each time they had returned two verdicts in conflict and two verdicts were lacking. The appellate court found no error in the trial court's conduct because there was no indication from the record that any of the verdicts had been acquittals, or that the jury had returned different verdicts after reconsideration. According to *Crawford,* several factors are necessary in order to find prejudicial error on the part of the trial court. First, it must be shown that what the court did "amounted in fact to telling the jury to reconsider a not guilty verdict it had returned . . . ." (*Id.* at p. 842.) Secondly, it must be shown that "on reconsideration a different verdict was returned." (*Ibid.*) And, thirdly, the "error must be affirmatively shown by the record and cannot rest upon speculation." (*Ibid.*)

Applying the foregoing factors to this case, it appears that the trial court's decision to direct the jurors to reconsider their guilty verdicts on the receiving-stolen-property counts was equivalent to telling them to reconsider not guilty verdicts on the burglaries. Moreover, the jury actually did change a verdict after reconsideration. Finally, there is no speculation involved as it is apparent from the record.

Plaintiff's reliance on *People* v. *Hernandez* (1985) 163 Cal.App.3d 645 [209 Cal.Rptr. 809] is misplaced. There, defendant was charged and convicted on one count of attempted rape and on a second count of assault with intent to commit rape. The trial court granted the jury's request to reconsider its verdict on the second count after the court had received and sealed such verdict and after it had granted more time to deliberate on the first count. The jurors ended up changing their decision on the second count from guilty on the lesser included offense of simple assault to guilty as charged, i.e., assault with intent to commit rape. The Court of Appeal resolved the section 1161 issue as follows: "Finally, the appellant also contends the trial court violated Penal Code section 1161 in allowing the jury reconsideration. We disagree. Penal Code section 1161 provides in relevant part, 'When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, . . . but when there is a verdict of acquittal, *the Court cannot require* the jury to reconsider it . . . .' (Italics added.) The concern of this section is with a trial court's initiation of jury reconsideration of their verdict on its own accord. (See *People*

v. *Crawford* (1953) 115 Cal.App.2d 838, 842 . . . .) In the case before us, the reconsideration of the verdict was clearly initiated by the jury itself. Thus this is not the case, as the appellant suggests, of a trial court refusing to accept a particular verdict and ordering the jury to reconsider their decision." (*People* v. *Hernandez, supra,* 163 Cal.App.3d at pp. 658-659, fn. omitted.)

In the present case, it was the trial court, and not the jury, that prompted the reconsideration of the verdicts. A verdict of acquittal having been entered on count VIII, the alternative count, double jeopardy principles would bar retrial on either count VII or count VIII.

II*

*Was defendant denied effective assistance of counsel by trial counsel's failure to make a motion to set aside the information?*

. . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment of conviction on count VII is reversed. The judgments of conviction on counts II, IV, VI and X are affirmed, and the cause is remanded to the trial court for resentencing.

Ballantyne, J., and Harris, J.,† concurred.

---

*See footnote *ante,* page 832.
†Assigned by the Acting Chairperson of the Judicial Council.