[No. B224887. Second Dist., Div. Five. Sept. 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ILLUMINADO ESPIRITU, Defendant and Appellant.

## COUNSEL

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## MOSK, J.—

### INTRODUCTION

Defendant and appellant Illuminado Espiritu (defendant) was convicted of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)),[1] and battery with serious bodily injury (§ 243, subd. (d)). The jury initially found "not true" the allegation that defendant personally used a deadly weapon, but after the trial court sent the jury back for further deliberations to reconsider its verdict, the jury ultimately found the allegation to be true. On appeal, defendant contends that the trial court erred by not recording the jury's original "not true" finding on defendant's use of a deadly weapon allegation. We reverse the true finding on the use of a deadly weapon allegation under section 1161 and because the trial court controlled the verdict. We remand the matter for resentencing. We otherwise affirm.

---

[1] All statutory citations are to the Penal Code.

## BACKGROUND

A. *Factual Background*

Noemi Espiritu, defendant's former wife, testified that on October 9, 2009, defendant entered her residence, stated to her "I will kill you," stabbed her several times with a knife, and choked her.[2] During the encounter, Noemi held defendant's hand to prevent being stabbed again, and defendant stabbed himself. Noemi yelled to their son to call 911.

The son testified that he called 911 to report the incident and saw his parents struggling over a knife. The son kicked his father and hit him with a kitchen chair, causing defendant to drop the knife.

Defendant testified that Noemi stabbed him first. During the incident, defendant and Noemi wrestled over the knife, and that may have caused Noemi to suffer her stab wounds. Defendant told a police officer that he only stabbed Noemi in self-defense.

B. *Procedural Background*

The District Attorney of Los Angeles County filed a second amended information charging defendant with first degree burglary in violation of section 459 (count 1), attempted first degree murder in violation of sections 664 and 187, subdivision (a) (count 2), and mayhem in violation of section 203 (count 3).[3] As to the charge of attempted first degree murder, it was alleged that defendant personally inflicted great bodily injury under circumstances involving domestic violence within the meaning of section 12022.7, subdivision (e), and defendant personally used a deadly and dangerous weapon, a knife, within the meaning of section 12022, subdivision (b)(1).

The matter was tried before a jury. The jury found defendant (1) not guilty of burglary, (2) not guilty of attempted murder, but guilty of the lesser offense of attempted voluntary manslaughter, and (3) not guilty of mayhem, but

---

[2] Because defendant and Noemi Espiritu share the same surname, Noemi Espiritu is referred to by her first name.

[3] The trial court granted defendant's motion pursuant to section 995, dismissing count 3 of a proposed first amended information charging defendant with mayhem in violation of section 203. The second amended information charged defendant with mayhem in violation of section 203 in count 4, but for purposes of the jury trial, count 4 was referred to as count 3.

guilty of the lesser offense of battery with serious bodily injury. The jury also found true the allegations that the offense of attempted voluntary manslaughter involved great bodily injury under circumstances involving domestic violence, and that defendant personally used a deadly and dangerous weapon. The trial court sentenced defendant to a prison term of eight years.

## C. *Jury Proceedings*

On count 2, the jury found defendant guilty of the lesser offense of attempted voluntary manslaughter, and the allegation that defendant personally inflicted great bodily injury under the circumstances involving domestic violence to be true. The jury initially found the allegation that defendant "personally used a deadly and dangerous weapon, to wit: a knife" to be not true, but, as discussed, ultimately found this allegation to be true.[4]

After the jury first provided the trial court with verdicts, the trial court summoned the prosecutor and defense counsel to a sidebar conference outside the presence of the jury, and during this sidebar conference, the trial court stated, "Never addressed this before on verdict forms with counsel before taking the verdicts. In this case, however, before we do it, I need to address count 2. [¶] It appears in count 2, the jury is returning a verdict of guilty as to the lesser count of attempted voluntary manslaughter. However, when it gets to the special allegations, it finds it to be true in regards to the commission of the above offense personally inflicted great bodily injury upon Noemi . . . within the meaning of 12022.7(e). However, we then go to the next allegation of the—during the commission or attempted commission, he personally used a deadly or dangerous weapon, to wit: a knife, and they find that not to be true. [¶] Does either counsel see any contradictions in that verdict?" Neither counsel offered an explanation.

The court's clerk read the verdicts in the presence of the jury. The trial court stated to the jury that it was "going to poll you individually as to some matters in your verdict forms." The trial court asked the jury, "In regards to the lesser offense in count 2, finding the defendant guilty of attempted voluntary manslaughter, was it your verdict in finding the special allegation that the defendant personally inflicted great bodily injury upon Noemi . . . under 12022.7(e)?" Each juror replied that he or she found the allegation to be true.

---

[4] On count 1, the jury also initially found defendant guilty of burglary in the second degree, and that the allegation that "another person, other than an accomplice to the above offense, was present in the dwelling during the commission of the above offense" to be true. On count 3, the jury found defendant guilty of battery with serious bodily injury.

The trial court also asked the jury, "The further allegation under [count 2], that in the commission and attempted commission of the above offense, the said defendant personally used a deadly and dangerous weapon, to wit: a knife, said use not being an element of the offense within the meaning of Penal Code section 12022(b)(1) to be—and the verdict indicates 'not true.' Is that your verdict as to that allegation . . . ?" Each juror replied in the affirmative.

The trial court then asked the jury, "in arriving at that finding in that special allegation, did you find that the—the great bodily injury inflicted upon Noemi . . . was inflicted with something other than a knife?" Each juror answered in the negative.

The trial court directed the court clerk to record the verdicts, and told the jury, "[The court will] send you back into the jury deliberation room as to the lesser offense in count 2 to review your findings in terms of the deadly or dangerous weapon as to whether that is, in fact, your finding. [¶] Send them back with the jury instructions also, madam clerk. If you need new verdict forms, please advise the court, and I will provide you with new verdict forms or you can leave the verdicts as they stand. Jurors, please retire to the jury deliberation room."[5]

Outside the presence of the jury, the trial court stated to counsel, "In regards to the lesser included offense of attempted voluntary manslaughter, [the jury] found that the infliction of great bodily injury involving domestic violence was true, and then the finding that during the commission of the offense the defendant was—was personally armed with a dangerous or deadly weapon, that being a knife not to be true. [¶] The court was inquiring to make sure that that was, in fact, their finding or that there was some other weapon or other instrument that may have caused them to make the finding in the bodily injury. The court heard no other evidence that could have caused the bodily injury."

The trial court stated further, "The court gives no direction to the jurors. Just simply I'm trying to understand their verdict, given the evidence in this case. Both can't be true in both instances. And both—and the court can see or read those verdict forms as a compromise verdict, which they're entitled to make since they are—one can't stand without the other in terms of findings. It would take an imagination beyond this court's to arrive at a compromise

---

[5] In addition, because each of the jurors responded, upon being polled by the trial court, that the burglary took place in a residence, the trial court deemed that there was no verdict as to count 1, and sent the jury back to the jury deliberation room to review its finding that defendant was guilty of burglary in the second degree.

verdict of that dimension within the findings of those special allegations that this court would then receive and record those verdicts as presented. And that's the reason for the court's actions."

During the further deliberations, the jury completed a jury request or question form asking the trial court, "Count 2—Guilty. What does the further allegation mean (12022b)? [¶] Please explain 'use not being an element of the above offense.' " Before the trial court could answer the jury's question, the jury stated that it had no questions, and they requested new verdict forms. The trial court stated that it would comply with the jury's request for new verdict forms.

Defendant's counsel stated, "Your Honor, when the court asked if I had any specific objection to that count 2, that lesser [offense], in terms of the procedure the court used, I do not. However, the court indicated that it could not see a logical way in which the [great bodily injury] could be caused unless the use of the knife. [¶] Frankly, I did not see it at any time, but conferring with Mr. Aguirre from my office and conferred with [the prosecutor] briefly, there is a scenario, even via a compromise perspective, where the jury could logically conclude that [defendant] never took possession of the weapon and, in essence, grabbing her wrist in a back and forth motion caused that injury. So, in essence, we have a logical conclusion to how those injuries could have occurred; although, be it a causation issue without the use of the weapon. I think if we had addressed that question or found out what their concerns were, it would have avoided this confusion."

The trial court responded by stating, "But you can't cause a great bodily injury unless you personally used a dangerous or deadly weapon." Defendant's counsel stated in response, "It stretches logic, but I don't suggest that it defies it."

The jury returned its new verdict forms. As to count 2, the jury changed its original finding on the allegation that defendant personally used "a deadly weapon, to wit: a knife," by finding it to be true.[6]

## DISCUSSION

Defendant contends that the trial court erred because pursuant to section 1161, it was obligated to record an acquittal or a "not true" finding once it is rendered by the jury, even if it is inconsistent with other portions of the verdict or appears to be based on a mistake of fact or law. The Attorney

---

[6] The jury also changed its original finding on count 1 and found that defendant was not guilty of burglary.

General contends that the trial court properly asked the jury to clarify the verdicts and that defendant, by failing to object, forfeited his contention that the trial court erred by not recording the jury's "not true" finding regarding the allegation that defendant personally used a deadly weapon.

### A. Forfeiture

Defendant's counsel did not make an objection before the trial court that the trial court was improperly directing the jury to reconsider its "not true" finding. Defendant's counsel merely stated a possible explanation for what appeared to the trial court to be inconsistent verdicts.

An objection is not necessary, however, to preserve a claim that defendant's substantial rights have been violated. (See, e.g., *People v. Barraza* (1979) 23 Cal.3d 675, 683–684 [153 Cal.Rptr. 459, 591 P.2d 947] [allegedly coercive instruction was reviewable despite defense counsel's statement that he had no objection to it].) In addition, application of the forfeiture rule is not automatic. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].) The appellate court has discretion to excuse forfeiture in cases presenting an important legal issue. (See *Canaan v. Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17 [221 Cal.Rptr. 468, 710 P.2d 268], overruled on other grounds in *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 183 [126 Cal.Rptr.2d 727, 56 P.3d 1029]; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) In arguing that the trial court violated section 1161, defendant raises an important legal issue by essentially contending that his substantial rights—compliance with California law and his right to a jury trial under the Sixth Amendment to the United States Constitution—were violated.

### B. Ineffective Assistance of Counsel

Even if a specific objection was necessary to avoid forfeiture of defendant's argument on appeal that the trial court violated section 1161, if such an objection had merit, defendant's counsel's failure to make a specific objection constituted ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must show that the conduct of his trial counsel about which he complains fell below the standard of reasonableness and that he was prejudiced by that conduct. (*People v. Kraft* (2000) 23 Cal.4th 978, 1068–1069 [99 Cal.Rptr.2d 1, 5 P.3d 68]; *People v. Foster* (2003) 111 Cal.App.4th 379, 383 [3 Cal.Rptr.3d 535].) Also, despite a claim of ineffective assistance, if "the record does not show the reason for

counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 [106 Cal.Rptr.2d 575, 22 P.3d 347].)

Here, it is below the standard of care for defendant's counsel not to object because the basis for the objection is clearly set forth by statute—section 1161. And, although the record does not disclose defendant's counsel's reasons for failing to object to the trial court not recording the "not true" finding and resubmitting the issue to the jury, there could be no satisfactory explanation for defendant's counsel's failure to object. Other than arguing that there was no error, Attorney General does not contend that defendant's counsel could have had such an explanation.

Defendant's counsel's failure to make such an objection, if such an objection should properly have been sustained, was prejudicial to defendant. Defendant suffered a "true" finding, as opposed to a "not true" finding, concerning the allegation that defendant personally used a deadly weapon. Thus, even if forfeiture occurred, "we nevertheless must determine whether" a timely objection "would have had merit." (*People v. Marshall* (1996) 13 Cal.4th 799, 824, fn. 1 [55 Cal.Rptr.2d 347, 919 P.2d 1280].)

### C. *Error*

■ Section 1161 specifies that "when there is a verdict of acquittal, the Court cannot require the jury to reconsider it."[7] "[O]nce the jury submits a verdict of acquittal to the trial court, the court may not order reconsideration of that verdict but rather must order that judgment be entered on the verdict. (§§ 1161, 1165; *People v. Blair* (1987) 191 Cal.App.3d 832, 839 [236 Cal.Rptr. 675].) Second, a trial court may not coerce a jury by rejecting its verdict and requesting it to continue deliberating. (*Ibid.*; see also *People v. Gainer* (1977) 19 Cal.3d 835, 842–843 [139 Cal.Rptr. 861, 566 P.2d 997].)" (*Bigelow v. Superior Court* (1989) 208 Cal.App.3d 1127, 1134 [256 Cal.Rptr. 528].)

■ "A jury's verdict of acquittal or not true may not be questioned by anyone else or in any other forum, and a trial court may not probe further

---

[7] At the time of defendant's trial, former section 1161 provided, "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the court cannot require the jury to reconsider it. If the jury render a verdict which is neither general nor special, the court may direct them to reconsider it, and it cannot be recorded until it is rendered in some form from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the court."

into the jury's deliberations. 'As a general rule, inherently inconsistent verdicts are allowed to stand. [Citations.] For example, "if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." [Citation.]' (*People v. Avila* (2006) 38 Cal.4th 491, 600 [43 Cal.Rptr.3d 1, 133 P.2d 1076] . . . .) The system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity." [Citation.]' (*Ibid.*)" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943 [98 Cal.Rptr.3d 175], some italics omitted.)

The Attorney General contends that the trial court's action was permissible under *Bigelow v. Superior Court, supra,* 208 Cal.App.3d 1127 because the court in that case stated that the trial court could have informed the jury that the verdict was not consistent "and asked the jury to clarify its verdict to show its true intent." (*Id.* at p. 1136.) In *Bigelow v. Superior Court, supra,* 208 Cal.App.3d 1127, the jury returned a verdict of not guilty of the crime of first degree murder but answered yes to the special circumstance charge. Without describing the ambiguity or inconsistency, the trial court sent the jury back to deliberate further. After one juror changed his or her mind on the murder charge, thereby deadlocking the jury, the trial court declared a mistrial. The court reversed, holding that the defendant was entitled to entry of a judgment of acquittal on the murder charge. The court noted that cases that permitted the trial court to resubmit inconsistent verdicts to the jury "presented patent and necessary inconsistency, namely, findings of guilty and not guilty on the same charge." (*Id.* at p. 1137.) And in those cases, "the jury error was immediately corrected, with no lengthy further deliberations." (*Id.* at p. 1138.)

As in *Bigelow v. Superior Court, supra,* 208 Cal.App.3d at pages 1137–1138, here any inconsistency in the verdict is one that is legally permitted. (*People v. Avila, supra,* 38 Cal.4th at p. 600; 6 Witkin, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, § 76, p. 110.) In directing the jury to return to the jury deliberation room to determine whether its verdict on count 2 was its true intent, the trial court required the jury to focus only on its finding that the allegation that defendant personally used "a deadly weapon, to wit: a knife" was not true. The trial court did not ask the jury also to clarify its verdict to show its true intent regarding the allegation that defendant was guilty of attempted voluntary manslaughter and its true finding regarding the allegation that defendant personally inflicted great bodily injury. By focusing only on the portion of the verdict concerning the allegation that defendant used a deadly weapon, which the jury originally found to be not true, the trial court made it clear to the jury that the trial court believed "not true" finding was incorrect. The court said, "The court could have . . . informed the jury that the acquittal was not consistent with findings of special circumstances and asked it to clarify its verdict to show its true intent. But instead, the court

sent the jury back to deliberate." (*Bigelow v. Superior Court, supra*, 208 Cal.App.3d at p. 1136.) Respondent cites no authority that allows a trial court to send the jury back for further deliberations on a punishment allegation because it is inconsistent with the jury's verdicts on the charges. (See *People v. Guerra, supra*, 176 Cal.App.4th at p. 943.)

■ Article VI, section 10 of the California Constitution states, "The court may make any comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." (See *People v. Sturm* (2006) 37 Cal.4th 1218, 1232 [39 Cal.Rptr.3d 799, 129 P.3d 10]; *People v. Rodriguez* (1986) 42 Cal.3d 730, 766 [230 Cal.Rptr. 667, 726 P.2d 113]; *People v. Moore* (1974) 40 Cal.App.3d 56, 66 [114 Cal.Rptr. 655].) In *People v. Rodriguez, supra*, 42 Cal.3d at page 766, our Supreme Court held, however, that the trial court's comments "must be accurate, temperate, nonargumentative, and scrupulously fair. The trial court may not, in the guise of privileged comment, . . . expressly or impliedly direct a verdict, or otherwise usurp the jury's ultimate factfinding power." The court in *Rodriguez* further said, "[W]e have made clear that the trial court has broad latitude in fair commentary, so long as it does not effectively control the verdict." (*Id.* at p. 768.) It is a "salutary blanket rule that the judge may never comment on guilt or innocence." (*Id.* at p. 770.) The trial court here effectively controlled the verdict and implicitly directed a verdict of a true finding on the allegation that defendant used a deadly weapon.

## DISPOSITION

The jury true finding on the allegation that defendant personally used a deadly weapon—a knife—is reversed. This matter is remanded for resentencing and for correction of the minutes. The judgment of conviction is affirmed in all other respects.

Armstrong, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the reversal. In terms of the merits, Penal Code section 1161 requires the entry of a verdict or finding which indicates a jury's decision to acquit. The trial court was required to enter the not true finding; no ifs, ands or buts. Additionally, in my view: no jury coercion occurred; the violation of Penal Code section 1161 has been forfeited; no issue of any consequence has been raised which excuses forfeiture; the failure of defense counsel to object was prejudicial in terms of the deadly weapon use issue; even on direct appeal, such would constitute ineffective assistance of counsel; I would direct briefing on that issue;

and then reverse the deadly weapon use finding because defense counsel failed to object. Criminal defense lawyers are charged with the duty to know the limitations on a trial court's right to direct the jury reconsider a verdict or finding of acquittal; no ifs, ands or buts. That did not occur here.

On October 14, 2011, the opinion was modified to read as printed above.